I,CARAWAY, J.
In this case, the trial court terminated the parental rights of the parents following the finding of multiple bone fractures to their seven week old infant. Finding no manifest error in the trial court’s ruling, we affirm.

Facts

L.M. and D.M. are the parents of two pre-school children, D.A.M. (DOB: 11/13/99), and D.V.M. (DOB: 1/3/01). The facts that give rise to these proceedings commenced on February 23, 2001, when L.M. took her younger son, D.V.M., then seven weeks old, to the emergency room in Minden because he would not stop crying and his leg was trembling. The emergency room x-rays revealed that D.V.M.’s left wrist and the right thigh bone were fractured. Based on these findings, the emergency room physician suspicioned that the fractures had been caused by physical abuse, and D.V.M. was transferred to LSU Medical Center in Shreveport (“LSUMC”) for further evaluation and treatment.
L.M. and D.M. were interviewed by the Minden police but neither one offered an explanation for D.V.M.’s injuries. Both parents were arrested and charged with second degree cruelty to a juvenile.
Based upon the severity of D.V.M.’s injuries, the State Department of Social Services, Office of Community Services (“State”) obtained temporary custody of D.V.M. and his older brother, D.A.M., on February 28, 2001, through an instanter order. Although a bone survey performed on D.A.M. was negative and there was no evidence to indicate that he was physically *469 abused, the State sought and obtained custody of him based on the severity Lof D.V.M.’s injuries. The parents stipulated through counsel at the adjudication hearing that D.V.M. and D.A.M. were “children in need of care.” The trial court continued their custody with the State. Both children were placed in the same foster home.
After conducting the initial case plan conference, the State established a case plan goal for L.M. and D.M. to acknowledge responsibility for D.V.M.’s injuries. In preparation for the dispositional hearing, the State advised the trial court that L.M. and D.M. “have not complied with the most significant part of the case plan” in that “they have not acknowledged nor have they provided any explanation as to how D.V.M. sustained so many broken bones before the age of seven weeks. They continue to give no explanation or discuss the injuries.” Based on the severity of the abuse, the State recommended that the children be freed for adoption and noted that a petition for termination of parental rights had already been filed.
The termination hearing was conducted on May 9, 2002. At the termination trial, Dr. Sadisvan, the orthopedic surgeon who admitted D.V.M., testified as to the existence of three fractures. In his opinion, two of the fractures (the left distal radius and the right distal femur) were “fresh” or less than 2 or 3 days old when the x-rays were taken, and one fracture (the right tibia) was older, i.e., 8 to 10 days old.
Dr. Odeta, a pediatric radiologist, testified at trial concerning his reading of D.V.M.’s bone survey performed on February 25, 2001. In his opinion, there was only one new fracture, the left distal radius. The older fractures involved the right distal radius, and both femurs. Dr. Odeta 1testified that these types of fractures were “highly specific for child abuse” because of the location of the fractures at the ends of the bones, and because of the existence of multiple fractures.
Dr. Olmedo, the orthopedic surgeon who treated D.V.M. at the clinic after he was discharged, also testified. During the course of D.V.M.’s visits to the clinic, she discovered the existence of an additional healing fracture involving the right proximal tibia. She testified that the possibility of brittle bone disease had been ruled out, that the fractures were caused by severe trauma, and that D.V.M. would have experienced extreme pain as the result of the fractures. Finally, Dr. Springer, a pediatrician with a specialty in child abuse and also a member of the LSUMC faculty, testified that D.V.M.’s injuries were typical of the types of fractures caused by inflicted injuries and were caused by child abuse.
The children’s parents also testified at the termination hearing. L.M. testified that she and D.M. married after their first son was born. D.M. worked at Fibrebond in Minden, and she was enrolled at Gram-bling. When she discovered that she was pregnant with D.V.M., they moved in with D.M.’s mother, Mrs. Reed, due to financial constraints. Mrs. Reed told them “no more babies,” as she largely took care of the older boy. L.M. testified that she hid her pregnancy from her mother-in-law. Mrs. Reed testified that she didn’t know L.M. had given birth to another baby until two weeks after the baby was born, when they brought him home. Although Mrs. Reed took care of D.A.M., she did not care for D.V.M.
D.V.M. was about three weeks premature and remained hospitalized |4for eight days. Thereafter, he was placed in a VOA home for five days to await adoption; however, L.M. and D.M. changed their minds about the adoption and took D.V.M. home when he was almost two weeks old. The medical testimony indicated that although *470 D.V.M. was premature, he was basically healthy and did not have any broken bones while he was placed in the VOA home.
Both parents testified that they did not know how D.V.M. was injured. It was suggested that perhaps D.M., who weighed over 300 pounds, could have rolled over on the baby while he slept. However, the medical testimony ruled out the possibility that these types of injuries could have been caused by an adult rolling over on an infant. The parents also testified that they left D.V.M. with a babysitter overnight about a week before taking him to the emergency room and that the injuries may have been inflicted by a third party.
The trial court found by clear and convincing evidence that the State had proved the grounds for involuntary termination of the parental rights of L.M. and D.M. under the specific provisions of La. Ch.C. art. 1015(3) and (5), and that the termination was in the best interests of D.V.M. and D.A.M. It is from this judgment that the parents appeal.

Discussion

Appellants urge that the trial court erred in finding proof of the grounds for termination by clear and convincing evidence. The record discloses that the State’s petition for termination alleged the events that led to discovery of DVM.’s injuries as the specific grounds for parental ^misconduct under La. Ch.C. art. 1015(3).
The grounds for termination of parental rights are listed in La. Ch.C. art. 1015 in pertinent part as follows:
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(h) A felony that has resulted in serious bodily injury.
(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
The State bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch.C. art. 1035(A); State in the Interest of SNW, 2001-2128 (La.11/28/01), 800 So.2d 809; State in the Interest of SMW, 2000-3277 (La.2/21/01), 781 So.2d 1223; State in the Interest of DSC, 35,893 (La.App. 2 Cir. 2/27/02), 811 So.2d 198; State in the Interest of MRH, 35,588 (La.App. 2 Cir. 10/31/01), 799 So.2d 1178. Although only one ground need be established, the trial court must also find that termination is in the child’s best interest. La. Ch.C. arts. 1015, 1039; State in the Interest of SNW, supra; State in the Interest of SMW, supra. A trial judge’s findings on factually-intense ^termination issues are governed by the manifest error standard of review. Id.
La. Ch.C. art. 1015(5) sets forth a three-pronged requirement for termination: (1) *471 the lapse of one year from the child’s removal from the home; (2) the lack of substantial parental compliance with a court-approved case plan; and (3) the lack of a reasonable expectation of significant improvement in the parent’s condition or conduct in the near future. La. Ch.C. art. 1015(5); State in the Interest of SNW, supra. The lack of parental compliance with a case plan may be evidenced by “[t]he parent’s lack of substantial improvement in redressing the problems preventing reunification.” La. Ch.C. art. 1036.
The trial court gave a thorough oral review of the evidence at the end of the trial. The court was convinced that the fractures occurred during the time that D.V.M. was in the sole custody of the parents and were not the result of the babysitter or some other person. The court also noted the parents’ motives for rejecting the child which were reflected in their ambivalence concerning the placement of the child for adoption and by L.M.’s desire to attend school. From our review of the record, we find that D.V.M.’s injuries established that extreme abuse, cruel and inhuman treatment occurred resulting in disabling physical and psychological injury. The evidence is clear and convincing that this abuse occurred over an extended period of time leading up to February 23, 2001, when the child was first taken to the hospital, and that both parents caused or allowed the injuries to occur and go unattended prior to February 23, 2001. Finally, Article 1015(3) confirms that termination of parental rights may occur if |7“any” child is subject to abuse. Therefore, the trial court’s ruling regarding the termination of the parental rights for the uninjured child, D.A.M., is also appropriate under the facts of this case. Accordingly, we find no manifest error in the ruling of the trial court terminating the parental rights of L.M. and D.M. to the two children. The judgment is affirmed with costs of appeal assessed to appellants.
AFFIRMED.